**SO ORDERED.**

**DONE and SIGNED March 28, 2017.**



_____
**JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Marie A. Hudson | § | Case Number: 14-11755 |
| | § | |
| Debtor | § | Chapter 13 |

## ORDER DENYING APPLICATION FOR COMPENSATION

This matter is before the Court on the Ex Parte Application for Administrative Expenses (ECF No. 104) counsel for the debtor. The Court held a hearing on this matter on March 22, 2017. After considering the pleadings, evidence, testimony, and arguments, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014.2. To the extent any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the

1

right to make any additional findings and conclusions as may be necessary or as requested by any party. The Court also reserves the right to supplement the findings of fact and conclusions of law. For the following reasons, the application is denied.

## PROCEDURAL AND FACTUAL BACKGROUND

The debtor, Marie A. Hudson, filed this Chapter 13 bankruptcy case on July 23, 2014. Her Chapter 13 plan was confirmed on October 26, 2015 (ECF No. 82). The debtor's attorney was awarded a fee in the amount of $2,000.00[1] in the confirmation order. Subsequent fee awards were entered on May 23, 2016, for a Chapter 13 Plan Modification in the amount of $500.00 (ECF No 98), and on February 26, 2017, for defense of a Motion to Lift Stay in the amount of $250.00 (ECF No. 117). Both of these additional fee awards are post-confirmation "no look" fees pursuant to this district's "No Look" fee order. Accordingly, this Court has awarded total compensation to the applicant's law firm of $2,750.00 in this case.

The instant fee application was filed on January 6, 2017. The applicant seeks additional compensation of $145.00. The fee relates to services from April 20, 2016, to May 19, 2016, not including the preparation of the fee application. Generally, the fee application relates to an Application to Incur Debt that was forwarded to the Chapter 13 Trustee for approval[2] but not filed with the Court. The application was filed approximately eight months after the services were rendered.

---

[1] The Court notes that the applicant's law firm substituted as counsel of record for the debtor prior to confirmation. For this reason, the applicant was not awarded a standard "no look" fee of $2,800.00.

[2] Applications to Incur Debt are governed by a Standing Order Adopting Procedures for Obtaining Credit in Chapter 13 Cases available at the Court's website http://www.lawb.uscourts.gov/court-info/local-rules-and-orders/general-orders that simplifies a debtor's request to incur debt. Applications may be filed with the Chapter 13 Trustee without motion or hearing. The process is simple. *See Bessy Mae Jenkins*, Case No. 14-11198, Docket No. 38.

The Court notes that the requested fee is for services performed before it entered the additional fee orders noted above. The prior fee applications or awards previously approved do not mention the additional fees now sought by the applicant. The Court also notes that the requested fee of $145.00 for the application to incur debt appears to be based on prior applications for the same amount and same work. It appears to be the standard fee sought by the applicant's law firm for such work. Further, the Court finds that the applicant's law firm is the only law firm seeking these fees. However, this request for fees appears to be based, in part, on this Court's opinion in the Bessy Mae Jenkins case (Case No. 14-11198, Docket No. 38).

## CONCLUSIONS OF LAW

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B) because it affects the administration of this Chapter 13 estate, as well as claims against the estate. Finally, this dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

The fees previously approved by the Court are governed by an Amended Standing Order Regarding "No Look" Fees in Chapter 13 Cases. That order was recently amended, but only for cases filed after February 1, 2017. The fees sought by the applicant are governed by the prior Standing Order Regarding "No-Look" Fees in Chapter 13 Cases that is dated September 13, 2013. As that Standing Order predates the procedure set by this Court for obtaining credit in Chapter 13 cases, there is not a "no look" fee for the work performed by the applicant. In any event, the previous Standing Order provides the following:

3

> IT IS ORDERED THAT: Nothing in this Standing Order should be viewed as barring an objection to a presumptive fee request by any party in interest or the Court, sua sponte. In the event of such an objection, after notice and a hearing, the Court may determine the reasonableness and/or appropriateness of a particular fee. Moreover, the Court reserves the right to periodically review the fees in Chapter 13 cases on its own motion, or on the request of a standing chapter 13 trustee, or the United States Trustee.

The Court's major concerns regarding the instant fee application revolve around two general areas. The first is what the Court considers to be "fee stacking"—that is filing multiple fee applications at different times for differing events so that the Court is unable to discern the total fee being sought by counsel for the work performed up to that date. When the Court approved the order modifying the debtor's Chapter 13 Plan on May 23, 2016, neither the order nor the modified plan mentioned any additional fees that are due or that would be sought. When the Court approved additional compensation on February 26, 2017, once again neither the application nor the order mentioned that any additional fees would be sought. While this Court is now aware that the instant fee application had been pending since January 6, 2017, which was before the Court's last compensation award in this case, the Court cannot be faulted for not being actively aware of its pending status given the docket of 122 entries. The Local Bankruptcy Rules specifically require of all fee applications in 2016-1(B) that the data supplied in substantiation of fees should allow the court to efficiently consider the applicable criteria, and that an application for professional's fees shall include certain information, which includes "[i]f it is a first application, it shall recite the retainer received by the applicant. If it is a subsequent application, it shall state the date of all prior applications and the amounts approved by the court." The various fee requests filed by the applicant are all deficient in this regard.

The applicant should bear the burden of notice concerning the total compensation that he is seeking if he files multiple fee applications. This Court cannot evaluate attorney fee applications

4

without proper disclosure. The stacking of attorney fees can possibly become excessive in Chapter 13 cases and this Court's duty is to see that attorney fees are properly disclosed, approved, and monitored. There must be reliable records of each attorney payment and attorney fee totals on each case for the Court to properly evaluate any fee application. Therefore, the Court declines to enter an additional attorney fee award in this case based on the application's untimeliness, the prior fee awards, the *res judicata* effect of these prior fee awards, as well as the lack of disclosure by the applicant. *See* Fed. R. Bankr. P. 2016(b).

Further, the Court declines to approve the requested fee application based specifically on its order approving the modification of the debtor's modified plan, and the $500.00 fee award contained therein, on May 23, 2016 (ECF No. 98). On May 3, 2016, the debtor filed a Motion to Modify Chapter 13 Plan (ECF No. 85).[3] That motion references that the plan is being modified to "surrender debtor's 2006 Acura TL to Willis Knighton Federal Credit Union." Less than ten days later, on May 11, 2016, the Chapter 13 Trustee's Approval for Application to Incur Debt was filed (ECF No. 95). That document granted the debtor authority to purchase a new vehicle to replace the car she surrendered in her modified plan. The amount approved is $15,649.50, at an interest rate of 18% and a monthly payment of $379.37 for 60 months. The amended budget filed on May 10, 2016 (ECF No. 89), in support of the modification includes this new budgeted car payment. Therefore, the Court concludes the modification and application to incur debt are each part of one transaction between the debtor and the applicant for which the applicant has already been more than adequately compensated through the approval of the "no look" fee of $500.00.

---

[3] The Motion to Modify Chapter 13 Plan is improperly styled by the debtor as "Debtor's Post Confirmation Amended Plan of Repayment; Post Confirmation Amended Plan Summary; Proposed Adequate Protection; and Request for Valuation of Security."

It is important to note that this Court believes that the "no look" fee for a Chapter 13 plan modification includes services that are ancillary to seeking the plan modification. This case is an excellent example when a modification is joined by an application to incur debt. When a plan modification includes other ancillary actions that are directly attributable to the plan modification, this Court considers the "no look" fee awarded as part of the modification request to include all of these services.

Additionally, and importantly, the Court declines to award the fee based on 11 U.S.C. § 330. That Code section provides the following:

> [i]n a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The other factors set forth in § 330(a)(3) include the following:

> [T]he nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The Fifth Circuit uses the "lodestar" method in evaluating applications for attorneys' fees. The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work. As the lodestar analysis hinges on an examination of the hours expended by the applicant, contemporaneous time records are necessary. The lodestar is computed by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. After determining the lodestar

amount, the court may adjust this total up or down in accordance with the relevant factors not already included in the lodestar.[4] *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Shipes v. Trinity Industries*, 987 F.2d 311, 319-20 (5th Cir.) cert. denied, 510 U.S. 991 (1993); *In re Cahill*, 428 F.3d 536 (5th Cir. 2005). In order to be compensable, professional services must be of value to the administration of the estate or of benefit to the estate. *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr. N.D. Tex. 1986).

In evaluating the instant application, the Court finds the following: (1) the time and labor required in both the Motion to Modify and the Application to Incur Debt are adequately compensated at the rate provided and that they can easily be performed with less than two hours of attorney time, (2) that the questions presented in both the Motion to Modify and the Application to Incur Debt are simple (the Court notes that both the Motion to Modify and the Application to Incur debt are forms easily completed by a paralegal), (3) that the work did not preclude any other employment, (4) that the applicant is seeking a non-customary fee for the work performed, as the applicant's firm is the only law firm seeking these fees, (5) that there were not significant time limitations imposed by the client or circumstances and that the work was easily performed in less than ten days, (6) that this Court has found on numerous occasions that the work performed by the applicant's law firm is not time effective[5] and (7) that this Court has not awarded these fees in any other bankruptcy cases other than those filed by the applicant's law firm.

---

[4] The Johnson factors are: (1) the time and labor required;(2)the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
[5] The Court notes that it has raised this issue with this applicant and other members of his law firm in other cases including, but not limited to, the following: Bessie Mae Jenkins, Case No. 14-11198; Calvin Hobley, Jr., Case No. 14-10771; Terry Ray Edwards, Case No. 11-13076; Yolanda Marston, Case No. 14-11196); James Earl Matlock Case No. 14-11196. These concerns have never been adequately addressed.

## CONCLUSION

For these reasons, the application is denied.

**ACCORDINGLY, IT IS ORDERED** that the Ex Parte Application for Administrative Expenses (ECF No. 104) is denied.

###